## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re

| | | |
|---|---|---|
| INTEGRATED HEALTH SERVICES, INC., et al., | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Case No. 00-389 (MFW) |
| | ) | |

| | | |
|---|---|---|
| Abe Briarwood Corporation | ) | |
| | ) | |
| Appellant/Cross-Appellee | ) | Civil Action No. 06-479 (GMS) |
| | ) | |
| v. | ) | |
| | ) | (Consolidated Lead Case) |
| IHS Liquidating LLC | ) | |
| | ) | |
| Appellee/Cross-Appellant | ) | |

## ABE BRIARWOOD CORPORATION'S REPLY BRIEF IN FURTHER SUPPORT OF APPEAL AND IN OPPOSITION TO CROSS-APPEAL

**DUANE MORRIS LLP**
Frederick B. Rosner (ID No. 3995)
1100 North Market Street
Wilmington, Delaware 19801
Tel: (302) 657-4900

**BACKENROTH FRANKEL & KRINSKY LLP**
Abraham Backenroth (AB-1989)
489 Fifth Avenue, 28th Floor
New York, New York 10017
Tel: (212) 593-1100

**Counsel to Abe Briarwood Corporation**

# TABLE OF CONTENTS

Page

ARGUMENT.................................................................................................................1

I.    THE BANKRUPTCY COURT ERRED IN DENYING BRIARWOOD'S SECOND
      MOTION FOR THE $1.5 MILLION POST-CLOSING MEDICARE RECEIVABLE,
      SINCE IT WAS AN ACCOUNT RECEIVABLE PURCHASED UNDER THE SPA
      AND NOT AN "EXCLUDED ASSET"....................................................................1

      A.    Since The Bankruptcy Court Denied The Second Motion
            On A Ground Not Even Raised By The LLC, Briarwood
            Was Unfairly Prejudiced And Deprived Due Process...........................................2

      B.    Both The Bankruptcy Court And The LLC Ignore That The
            SPA Did Not Contemplate A Waiver Of All Briarwood's Rights
            To Recover All Receivables Owed By CMS To The Debtors
            ...................................3

      C.    Both The Bankruptcy Court And The LLC Ignore That
            The Ruling Vitiates The Acknowledged Net Effect Of The
            Government Settlement, Which Required The LLC To
            Make A $2 Million Payment To The Government......................................................4

II.   THE BANKRUPTCY COURT INCORRECTLY RULED THAT THE $9.5 MILLION
      IN GEORGIA MEDICAID OVERPAYMENTS WAS BRIARWOOD'S
      LIABILITY.....4

      A.    The Bankruptcy Court Incorrectly Ruled That The SPA Did Not Require
            IHS To Pay Any Of The Georgia Medicaid Overpayments Pre-
Closing.................5

      B.    The Georgia Medicaid Overpayments, Excess Payments Which Have
            Been Characterized By Both IHS And The GDC As "Prospective"
            Payments, Alternatively Constitute Either "Prepaid Items"Or
            "Deposits"..............7

      C.    The LLC Tacitly Concedes That The Bankruptcy Court Erred In Ruling That
            Briarwood Waived Its Claims To The Georgia Medicaid Overpayments, And Is
            Precluded From Defending On Alternative Theories Of Judicial
            Admissions........9

III   THE BANKRUPTCY COURT ERRED IN DENYING
      BRIARWOOD REIMBURSEMENT FOR $2 MILLION
      IN TRUST FUND TAXES FOR EMPLOYEE WAGES
      THAT ACCRUED PRE-CLOSING.......................................................................11

i

A.    The Bankruptcy Court Ignored That SPA §5.1 Required The Debtors To Comply With All Legal Requirements And/Or Precluded Them From Incurring Debt In Excess of 250,000, Which They Failed To Do, And Which Constitute "Excluded Liabilities".........................................................................11

B.    The LLC's Answering Brief Does Not Address Briarwood's Argument That The Trust Fund Taxes Are Either "Trust Funds" Or "Related To Cash" "Excluded Liabilities"....................................12

COUNTER-STATEMENT OF THE ISSUES PRESENTED ON CROSS-APPEAL...................13

COUNTER-STATEMENT OF THE CASE ON CROSS-APPEAL.............................................14

A.    The Rotech Counterclaim.......................................................................15

B.    The Attorney Fee/Cost Counterclaim...................................................16

IV    THE BANKRUPTCY COURT PROPERLY DENIED THE LLC's ATTORNEY FEE/COST COUNTERCLAIM.......................................................17

A.    The LLC's Attorney Fee/Cost Counterclaim, The Gravamen Of Which Is For Breach Of The SPA and Damages, Is Barred Under SPA §2.2(a), Which Limits Recovery To The Deposit.........................................17

B.    The Bankruptcy Court Correctly Ruled That There Was No "Prevailing Party"..18

I.    The Bankruptcy Court's Denial Of The Rotech Counterclaim Was Not A "Victory For The LLC".....................................18

II.    The Bankruptcy Court Correctly Ruled, In Its Discretion, That There Was No Prevailing Party, Since (a) All the LLC's Counterclaims Were Denied; (b) The Rotech Counterclaim Did Not Require Proof Outside Of Briarwood's Claims; And (c) The $98 Million Rescission And $19.1 Million Counterclaims Were Financially And/Or Legally Weighty And/Or Complex.............................19

CONCLUSION ...................................................................................... 22

## TABLE OF AUTHORITIES

### CASES

Page

*25 East 83 Corp., v. East 83rd Street Associates,*
213 A.D.2d 269, 624 N.Y.S.2d 125 (1st Dep't 1995)...................................................20

*Artha Management,*
91 F.3d 326 (2d Cir. 1996).................................................................................10

*City of Rome, Italy v. Glanton,*
184 F.R.D. 547 (E.D. Pa. 1999)...........................................................................20

*Diaz v. Rerio,*
2000 WL 502852 (S.D.N.Y. 2000).........................................................................10

*Great Earth International Franchising Corp. v. Milks Development,*
2004 WL 2049268 (S.D.N.Y.)..............................................................................20

*Harris v. City of Philadelphia,*
35 F.3d 840 (3d Cir. 1994)...................................................................................10

*Kropp v. Ziebarth,*
601 F.2d 1348 (8th Cir. 1979)..............................................................................19

*Lowy v. Bay Terrace,*
869 F.2d 173 (2d Cir. 1989).................................................................................10

*Magee v. McNany,*
11 F.R.D. 592 (W.D. Pa. 1951).............................................................................19

*Maine School Administrative District No. 35 v. Mr. And Mrs. R.,*
321 F.3d 9 (1st Cir. 2003)...................................................................................20

*Meinwald v. Meinwald,*
56 A.D.2d 565, 391 N.Y.S.2d 872 (1st Dep't 1977)....................................................10

*Q-Tips, Inc. v. Johnson & Johnson,*
108 F.Supp. 845, 871 (D. N.J. 1952), aff'd. 206 F.2d 144 (3rd Cir. 1953), mod, 207 F.2d
509 (3rd Cir. 1953), cert denied, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086
(1954)..........................................................................................................19

iii

*Scientific Holding Company, Ltd., v. Plessey Incorporated,*
    510 F.2d 15 (2d Cir. 1974)............................................................................20

*Srybnik v. Epstein,*
    230 F.2d 683 (2d Cir. 1956)........................................................................19

*Terrydale Liquidating Trust v. Herbert Barness,*
    645 F. Supp. 920 (S.D.N.Y. 1986)..............................................................20

*Tyler v. O'Neil,*
    112 Fed. Appx. 158 (3rd Cir. 2004) ......................................................19,20

*Visiting Nurse Ass'n of Western Pennsylvania,*
    101 B.R. 462 (Bankr. W.D. Pa. 1989), aff'd, 143 B.R. 633 (W.D. Pa 1992), aff'd, 986
    F2d 1410 (3d Cir. 1993)
    .........................................................................................8,9

## STATUTES, CODES AND RULES

26 U.S.C. § 3102...........................................................................................11

26 U.S.C.  § 3402..........................................................................................11

26 U.S.C. §7501(a)........................................................................................11

26 C.F.R. §31.6302-1.....................................................................................11

New York General Obligations Law §15-301(1).............................................10

3d Cir. R. 28.3...............................................................................................20

3d Cir. App. I, IOP 5.3....................................................................................20

CPLR Rule 2104.............................................................................................10

## SECONDARY SOURCES

10 Federal Practice And Procedure, Wright, Miller & Kane, §2668............................. 19

Abe Briarwood Corporation ("Briarwood") submits this reply brief in further support of its appeal, and in opposition to the cross-appeal of IHS Liquidating LLC's ("LLC"), the successor to the debtor Integrated Health Services Inc. ("IHS" or the "Debtor").[1]

## ARGUMENT

### I.

### THE BANKRUPTCY COURT ERRED IN DENYING BRIARWOOD'S SECOND MOTION FOR THE $1.5 MILLION POST-CLOSING MEDICARE RECEIVABLE, SINCE IT WAS AN ACCOUNT RECEIVABLE PURCHASED UNDER THE SPA AND NOT AN "EXCLUDED ASSET"

The LLC's Answering Brief does not dispute that (a) Briarwood acquired all IHS' assets under the SPA (§5.9) (except "Excluded Assets"), including all account receivables (D-24, Ex. 1); and (b) the $1.5 million Post-Closing Medicare Receivable was not listed as an SPA "Excluded Asset" (D-24, Ex. 2). Moreover, Briarwood's Opening Brief showed that the LLC's written response to Briarwood's second motion ("Second Motion") did not dispute that the Post-Closing Medicare Receivable was (a) an account receivable acquired by Briarwood under the SPA; and (b) not an "Excluded Asset" (D-16). The LLC's Answering Brief does not dispute such assertions, nor does it dispute the Bankruptcy Court's finding that the Post-Closing Medicare Receivable was an account receivable (D-21, p. 22). Thus, the Bankruptcy Court erred in denying Briarwood's Second Motion for the Post-Closing Medicare Receivable, since it was undisputedly an account receivable purchased under the SPA and not an "Excluded Asset".

---

[1]    Citations to documents contained in Briarwood's Designation of Items to be included in the Record on Appeal and Statement of Issues for Appeal are referred to as "D-". Certain of the definitions set forth in Briarwood's Opening Brief are incorporated by reference herein.

**A.**    **Since The Bankruptcy Court Denied The Second Motion On A Ground Not Even Raised By The LLC, Briarwood <u>Was Unfairly Prejudiced And Deprived Due Process</u>**

The Bankruptcy Court denied Briarwood's Second Motion on the sole ground that the SPA contemplated that all Government claims would be resolved (D-21, p. 26) pursuant to the Government Settlement between the Debtors and the United States (D-25, Ex. 20). Briarwood's Opening Brief demonstrated that the LLC's written response never raised this defense to the Second Motion (D-16). Moreover, the LLC does not truly dispute that it failed to raise this specific defense to the Second Motion.

Instead, the LLC asserts that Briarwood was not prejudiced, since the LLC argued in its written response and during oral argument of the Second Motion that resolution of the first motion to compel SPA compliance ("First Motion") may determine issues on the Second Motion, requiring its deferral. However, the LLC's assertion is nothing more than an attempt to confuse the Court, since it never asserted that the SPA contemplated that all Government claims would be resolved (D-21, p. 26) pursuant to the Government Settlement (D-25, Ex. 20). At best, the LLC merely asserted that the Bankruptcy Court could determine that the LLC has a viable $2 million counterclaim against Briarwood under the Government Settlement (i.e., if Briarwood, as the Debtor's successor, is entitled to receive 17 million in government receivables that went to the LLC, then it should also be required to reimburse the LLC for 19 million it paid to the government), and therefore it should be entitled to keep the $1.5 million to satisfy part of Briarwood's $2 million debt.

The LLC's written response to the Second Motion stated:

> "The Liquidating LLC has also asserted a counterclaim against

2

Briarwood for reimbursement for the $2 million payment, based upon Briarwood's own assertion that it is the 'Debtors' for purpose of receiving the $17.1 million payment. If the term "Debtors" is read consistently throughout the United States Settlement Agreement, then Briarwood must also accept responsibility for paying the $19.1 million payment obligation under the same agreement. Thus, Briarwood's argument leads to the inevitable conclusion that Briarwood owes the Liquidating LLC $2 million as reimbursement for its payment of Briarwood's net obligation." (D-16, para 6).

The LLC's counsel likewise stated at oral argument of the Second Motion:

"The $17.1 million that they are claiming and we are disputing -- we're saying they're only entitled to receive 17 if they're also obligated to pay the 19 -- is the same general framework, falls within the same roof as this million five, and depending on what Your Honor rules with respect to Briarwood's entitlement to receive $19 million back from Briarwood in such event, that may very well also determine this current dispute (D-19, p. 32).

The LLC further asserts that Briarwood was not prejudiced, since the Bankruptcy Court authorized Briarwood to file an additional brief if necessary. However, Briarwood's ability to file an additional brief is irrelevant and does not negate the prejudice to it, since the LLC had failed to raise the defense utilized by the Bankruptcy Court in denying the Second Motion (i.e., that the SPA contemplated that all Government claims would be resolved (D-21, p. 26) pursuant to the Government Settlement).

**B.      Both The Bankruptcy Court And The LLC Ignore That The SPA Did Not Contemplate A Waiver Of All Briarwood's Rights To Recover All Receivables Owed By CMS To The Debtors**

Briarwood's Opening Brief showed that the Bankruptcy Court ignored that the SPA merely contemplated that the Government Settlement would resolve all Government claims against the Debtors (see, SPA §6.17, requiring a settlement agreement regarding the Government's "asserted claims against Seller" [IHS])(D-24, Ex. 1), as opposed to a waiver of Briarwood's rights to recover all CMS receivables owed to the Debtors. The LLC's Answering

3

Brief ignores this argument as well. Indeed, both the Bankruptcy Court and the LLC fail to cite to one solitary sentence in the SPA which expressly states that Briarwood waived its right to recover the CMS receivables.

Conversely, both the Bankruptcy Court and LLC ignore that the SPA expressly prohibits waiver, unless such waiver is in writing (SPA §11.2)(D-24, Ex. 1). Thus, the Bankruptcy Court erred in effectively ruling that the SPA contemplated a waiver of all Briarwood's rights to recover all CMS receivables, including the $1.5 million Post-Closing Medicare Receivable.

**C.    Both The Bankruptcy Court And The LLC Ignore That The Ruling Vitiates The Acknowledged Net Effect Of The Government Settlement, Which Required The LLC To Make A $2 Million Payment To The Government**

Briarwood's Opening Brief demonstrated that both the Bankruptcy Court and the LLC acknowledged that the "net effect" of the Government Settlement was that the LLC "owed the United States $2 million", or the differential between the 19.1 million and 17.1 million payments, which the LLC paid (D-21, p. 23)(D-7, p. 50[2-6])(117[19-25] & 118[1-12]). The LLC's Answering Brief does not dispute this. Thus, the Bankruptcy Court erred in lumping the $1.5 million Post-Closing Medicare Receivable together with the $17.1 million receivable, since it incorrectly vitiated the acknowledged net effect of the Government Settlement, and reduced the LLC's net liability from $2 million to only $500,000.

**II**

**THE BANKRUPTCY COURT INCORRECTLY RULED THAT THE $9.5 MILLION IN GEORGIA MEDICAID OVERPAYMENTS WAS BRIARWOOD'S LIABILITY**

The LLC does not dispute the Bankruptcy Court's findings that prior to Closing, (a) the

GDC overpaid the Debtors in excess of $9.5 million in Georgia Medicaid Overpayments from April 2003 to August 2003 (D-21, p. 14); (b) the Debtors were aware of the Georgia Medicaid Overpayments (D-21, p. 15); (c) the Debtors and the GDC had reconciled the amount of the Georgia Medicaid Overpayments (D-21, p. 16); and (d) on August 28, 2003, Mark Trail, the GDC Chief, made demand upon IHS to pay back in excess of $9.5 million in Georgia Medicaid Overpayments (D-21, p. 16).

**A.      The Bankruptcy Court Incorrectly Ruled That The SPA Did Not Require IHS To Pay Any Of The Georgia Medicaid Overpayments Pre-Closing**

The LLC's Answering Brief does not dispute that SPA §5.1(k), which precludes the Debtors from incurring any obligations in excess of $250,000 through Closing (D-26, Ex. 1), applies to the Georgia Medicaid Overpayments. Thus, the Georgia Medicaid Overpayments constitute liabilities under the SPA (§5.1[k]), which are "Excluded Liabilities" remaining with the LLC (D-24, Ex. 3). Therefore, the Bankruptcy Court erred in ruling that the SPA did not require IHS to pay the Georgia Medicaid Overpayments pre-Closing.

Even if §5.1(k) does not apply, the Debtor was still required to pay the Georgia Medicaid Overpayments under SPA §5.16. Indeed, Briarwood's Opening Brief showed that (a) SPA §5.16 required IHS to pay any pre-Closing Medicaid recoupments in the ordinary course of business; (b) Johnsen, IHS' Vice-President (D-7, p. 17[22-25]), admitted that the Georgia Medicaid Overpayments would constitute Medicaid recoupments (D-7, pp. 82[24-25], 83[1-2] & 84[8-20]); (c) the LLC had not previously challenged Johnsen's admission, which was raised solely by the Bankruptcy Court; and (d) the Bankruptcy Court ignored Johnsen's additional testimony that the Georgia Medicaid Overpayments would constitute Medicaid recoupments.

The LLC's Answering Brief merely echoes the Bankruptcy Court's selective recitation of Johnsen's testimony, disputing for the first time Johnsen's admission. However, like the Bankruptcy Court, the LLC also ignores Johnsen's additional testimony during the August 10, 2005 Hearing that the Georgia Medicaid Overpayments would constitute Medicaid recoupments, as follows:

> "Q.    So would the claim of Georgia for 9,506,944.90 be, in your opinion, a recoupment payment?
> "A     Say that again.
> "Q     Would the 9,506,944.90 claim by the State of Georgia, would that be, in your opinion, a Medicaid recoupment item?
> "A     I think you could call it a Medicaid recoupment."
> "Q     Do you recall testifying to that?
> "A     Yes .... (D-7, p. 84[15-22]).

Thus, the Georgia Medicaid Overpayments also constitute liabilities under SPA 5.16, which are "Excluded Liabilities" remaining with the LLC (D-24, Ex. 3). In order to escape its obligation for "Excluded Liabilities", the LLC merely parrots the Bankruptcy Court's ruling that SPA §5.16 did not require payment of the Georgia Medicaid Overpayments pre-Closing, since the Debtors ordinarily made such payments over time by recouping. However, Briarwood's Opening Brief pointed out that the Bankruptcy Court's observation ignores its own finding that on August 28, 2003, prior to Closing, Mark Trail, the GDC Chief, made demand upon IHS to pay back the $9,506,944.90 in Georgia Medicaid Overpayments (D-21, p. 15).

The LLC asserts that there is no evidence that it received the GDC's August 28, 2003 demand letter or alternatively, when it was received (LLC AnsBrief p. 17). However, the Bankruptcy Court rejects the LLC's former assertion, indicating that the only unclear issue is when the letter was received (D-21, p. 16). In any event, the timing is irrelevant, since the letter states that it is confirming as of August 28, 2003, the prior reconciliation with IHS of the total

6

amount due of $9,506,944.90, and that payment is expected (D-18). Thus, the LLC ignores that

the reconciliation and demand for payment took place at some point prior to August 28, 2003. In

fact, the Bankruptcy Court found that the Debtors and GDC had reconciled the amount of the

Georgia Medicaid Overpayments at sometime prior to Closing (D-21, p. 16). In any event,

Briarwood's Opening Brief shows that the Bankruptcy Court's interpretation of SPA §5.16

leads to an absurd result, since it completely vitiates IHS's obligation to pay even in the ordinary

course of business.

**B.      The Georgia Medicaid Overpayments, Excess Payments Which Have
          Been Characterized By Both IHS And The GDC As "Prospective"
          <u>Payments, Alternatively Constitute Either "Prepaid Items"Or "Deposits"</u>**

The LLC either concedes or does not dispute (a) the Bankruptcy Court's findings that

both the Debtor and GDC characterized the Georgia Medicaid Overpayments as "prospective"

payments (LLC AnsBrief p. 24; D-21, pp. 15 &19); (b) that under cross-examination, Rosenfeld,

the LLC's expert accounting witness, acknowledged after impeachment that "prospective"

payments or payments made in advance of services rendered, would constitute a "prepaid item"

(D-7, pp. 145[3-25], 146[1-4 & 17-25] & 147[1-7]); and (c) that the GDC's characterization of

the Georgia Medicaid Overpayments as "prospective" payments  could make them prepaid items

or deposits.

Instead, the LLC essentially repeats the portion of the Bankruptcy Court's ruling that the

Debtors' characterization of the Georgia Medicaid Overpayments as "prospective" payments

does not make them pre-paid items or deposits, since they are not assets but rather liabilities.

Moreover, the LLC does not dispute that the Bankruptcy Court's conclusion was based on

Rosenfeld's testimony, and evidence that the Debtors did not segregate such payments but rather

swept them into the Debtors' concentration account. Indeed, the LLC relies upon the same two

7

factual predicates. However, like the Bankruptcy Court, the LLC ignores Rosenfeld's expert testimony that "prospective" payments or payments made in advance of services rendered, would constitute a "prepaid item". Moreover, like the Bankruptcy Court, the LLC also overlooks that the Debtors' improper failure to segregate the Georgia Medicaid Overpayments does not change their status as either pre-paid items or deposits.

Furthermore, the LLC confusingly argues that the Debtors' description of the Georgia Medicaid Overpayments as "prospective payments" can not be an admission, since they are assets and not liabilities (LLC AnsBrief p. 24). However, the LLC's ignores that a party can be bound by any admission. Moreover, here the LLC's admission that the Georgia Medicaid Overpayments were "prospective payments" was further corroborated by the impartial GDC. Thus, since the

Georgia Medicaid Overpayments were prospective payments made in advance of services rendered, they constitute "prepaid items" which are a "Cash" exclusion (D-24, Ex. 2) and which should have been turned over to Briarwood at Closing.

Alternatively, the LLC does not dispute that the Georgia Medicaid Overpayments constitute excess payments which belong to the GDC and unjustly enriched the Debtors. Nor does the LLC dispute the legal proposition set forth in Visiting Nurse Ass'n of Western Pennsylvania, 101 B.R. 462 (Bankr. W.D. Pa. 1989), aff'd, 143 B.R. 633 (W.D. Pa 1992), aff'd, 986 F.2d 1410 (3d Cir. 1993), that a bankrupt provider should hold Medicare over payments in a constructive trust for Medicare.

Rather the LLC merely rehashes the Bankruptcy Court's attempts to distinguish Visiting Nurse, on the sole ground that there the debtor had segregated the funds (D-21, pp. 20-21). As

8

stated, however, and ignored by the LLC, the Debtors' improper failure to segregate the Georgia

Medicaid Overpayments, does not change their status as either pre-paid items or deposits. Thus,

Thus, since the Debtors should have held the Georgia Medicaid Overpayments in trust for or set

aside to pay the GDC, they constitute "deposits", as a matter of law, which are also exclusions to

"Cash" (D-24, Ex. 2) and a liability relating to an "Excluded Asset", i.e., "Cash" which should

have been used to pay the overpayments (D-24, Ex. 3).

C.    **The LLC Tacitly Concedes That The Bankruptcy Court Erred In Ruling That Briarwood Waived Its Claim To The Georgia Medicaid Overpayments, And Is Precluded From Defending On Alternative Theories Of Judicial Admissions**

Briarwood's Opening Brief showed that the Bankruptcy Court ruled that Briarwood

waived its rights to recover the Georgia Medicaid Overpayments, since it agreed to pay certain

limited Medicaid liabilities relating to the Foster Nursing Home to avoid a protracted litigation.

The LLC either concedes or does not dispute that (a) the heading on this point in the Bankruptcy

Court's Opinion is entitled "<u>Waiver</u>" (LLC AnsBrief p. 28); (b) it did not raise this specific

waiver argument in its Post-Trial Brief (D-12); (c) the Bankruptcy Court ignored that the SPA

expressly prohibits waiver, unless such waiver is in writing (SPA §11.12); (d) Briarwood did not

sign any writing waiving its right to sue the LLC for the Georgia Medicaid Overpayments; and

(e) the Bankruptcy Court ignored that Briarwood's alleged waiver was not knowingly or

intentionally made.

Moreover, the LLC tacitly concedes that the Bankruptcy Court erred, asserting that the

Bankruptcy Court really meant that Briarwood is precluded by either "judicial admission" or by

an open Court agreement, as opposed to waiver (LLC AnsBrief p. 28). Thus, based on the

foregoing, the Bankruptcy Court erred in ruling that Briarwood waived its rights to recover the

Georgia Medicaid Overpayments.

Furthermore, the LLC's new defenses, i.e., that Briarwood is precluded by either judicial admission or open Court agreement, were not raised below, and should not be considered on appeal. Harris v. City of Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994)(LLC Ans Brief p. 21). The LLC's reliance upon Meinwald v. Meinwald, 56 A.D.2d 565, 391 N.Y.S.2d 872 (1st Dep't 1977) for the proposition that open Court agreements are enforceable even if they modify a written agreement, is also misplaced, since federal court settlements are governed by federal and not state law. Artha Management, 91 F.3d 326, 329 (2d Cir. 1996)(in a case arising under federal law, an attorney's authority to bind his client is governed by federal and not state law[2]). To the extent relevant, Meinwald, supra, supports Briarwood's position, pointing out that New York General Obligations Law §15-301(1) precludes a document containing a merger clause (as here, see, SPA §11.9) from being modified without a writing, Id., 391 N.Y.S.2d at 873.

LLC's reliance upon Diaz v. Rerio, 2000 WL 502852 (S.D.N.Y. 2000) and Lowy v. Bay Terrace, 869 F.2d 173 (2d Cir. 1989), for the proposition that Briarwood is bound by a judicial admission, is also misplaced, since those authorities did not involve agreements containing both no waiver and merger clauses. In any event, Briarwood did not intentionally and knowingly admit that it will waive its rights to sue the LLC for the $9.5 million in Georgia Medicaid Overpayments, and the LLC has failed to show any express language to that effect.

### III

### THE BANKRUPTCY COURT ERRED IN DENYING BRIARWOOD REIMBURSEMENT FOR THE $2 MILLION IN TRUST FUND TAXES FOR EMPLOYEE WAGES THAT ACCRUED PRE-CLOSING

---

[2]    Moreover, in contrast to federal law, open court settlements under New York law are governed by CPLR Rule 2104 which essentially provides that an open court settlement is the functional equivalent of a written document.

10

**A.    The Bankruptcy Court Ignored That SPA §5.1 Required The Debtors To Comply With All Legal Requirements And/Or Precluded Them From Incurring Debt In Excess of 250,000, Which They Failed To Do, And Which Constitute "Excluded Liabilities"**

The LLC does not dispute (a) that employers are required to withhold federal income and social security taxes from their employees' wages, 26 U.S.C. §'s 3102 & 3402; (b) that the withheld taxes are deemed to be held in trust for the Government's benefit, and called "trust fund taxes," 26 U.S.C. §7501(a); (c) the Bankruptcy Court found that the employer is also required to deposit the employment taxes in a government-approved depositary bank and to report the amount collected to the IRS, 26 C.F.R. §31.6302-1 (D-21, p. 13); (d) the Bankruptcy Court found that "(n)o funds were actually withheld for the taxes at issue or segregated by the Debtors in a payroll account or any other account" (D-21, p. 10); (e) that SPA §5.1 required the Debtors to comply with all Legal Requirements through Closing; and (f) that SPA Article V provisions (such as § 5.1) constitute affirmative obligations which survive the Closing (D-21, p. 10).

The LLC also does not dispute that the Bankruptcy Court erroneously limited §5.1 to merely requiring the Debtors to operate in the ordinary course of business through Closing (D-21, p. 10), as opposed to also complying with all Legal Requirements.[3] Flowing from such error, the Bankruptcy Court ruled that the Trust Fund Taxes – from payrolls issued on or prior to the August 29, 2003 Closing – did not come due in the ordinary course of business until several days later on September 2, 2003, which was post-Closing. However, both the Bankruptcy Court and the LLC have failed to cite any legal authority for the legal proposition that the Trust Fund Taxes were not contemporaneously due, relying instead upon the factual testimony of the two (2) LLC

---

[3]    In order to excuse the Bankruptcy Court's error, the LLC argues that the Bankruptcy Court found that IHS had complied with all "Legal Requirements" (LLC AnsBrief p. 21). However, the Bankruptcy Court made no such finding.

witnesses. Thus, the Bankruptcy Court ignored that the Debtors were required by both law and

the SPA to (a) withhold and remit the Trust Fund Taxes; and (b) deposit the Trust Fund Taxes in

a government-approved bank.

Briarwood's Opening Brief further argued that IHS violated § 5.1(g), which precluded

the Debtors from incurring any debt in excess of $250,000 through Closing (D-24, Ex. 1). In an

attempt to confuse the Court, the LLC argues that § 5.1(k) is inapplicable since, among other

things, it does not apply to "Taxes" (LLC AnsBrief p. 22). However, Briarwood never stated that

§ 5.1(k) applies to the Trust Fund Taxes. The LLC further argues that 5.1(g) is inapplicable,

since Briarwood never raised such argument below. However, Briarwood asserted that IHS

violated § 5.1, which encompasses § 5.1(g), and further asserted that IHS did violate § 5.1(g)(D-

11, paras 48-49, 118 & 123). The LLC also asserts that § 5.1(g) is inapplicable, since the term

Indebtedness therein is defined under SPA § 1.1 as debt related to borrowed funds (LLC

AnsBrief p. 22). The LLC's assertion is false, since SPA § 1.1(ii) also defines Indebtedness to

include, among other things, all debt guaranteed in any manner by any IHS subsidiary, which

would likewise include the Trust Fund Taxes.

## B.    The LLC's Answering Brief Does Not Address Briarwood's Argument That The Trust Fund Taxes Are Either "Trust Funds" Or "Related To Cash" "Excluded Liabilities"

Briarwood's Opening Brief also asserted that it should be reimbursed for the Trust Fund

Taxes, since (i) they alternatively constitute either (a) trust funds on which is impressed a trust;

(b) excluded liabilities, because they relate to excluded assets, namely cash withheld from

employees which should have been used to pay the Trust Fund Taxes; and (ii) the Bankruptcy

Court erred in precluding recovery on both theories solely on the ground that the Debtors did not

segregate any funds for withholding taxes in any bank account; because the Debtor's improper

failure to segregate the Trust Fund Taxes does not change their status as either "trust funds", or "related to cash" "Excluded Liabilities". The LLC's Answering Brief does not address these arguments; instead, it merely asserts that the Trust Fund Taxes are neither "prepaids" nor "deposits". Thus, the Bankruptcy Court should be reversed on this issue.

## COUNTER-STATEMENT OF THE ISSUES PRESENTED ON CROSS-APPEAL

The issues on cross-appeal in this case include the following:

1.      Whether the Bankruptcy Court's finding, after a two (2) day trial, denying the LLC's counterclaim for attorney's fees and costs was clearly erroneous, especially since it is a claim for breach of the SPA and damages which is barred under SPA §2.2(a), which limits the LLC's recovery to Briarwood's deposit.

2.      Whether the Bankruptcy Court's discretionary finding, after a two (2) day trial, that there was no "prevailing party" was clearly erroneous, especially since (a) all of the LLC's counterclaims were denied; (b) the Rotech counterclaim did not require proof outside of Briarwood's claims; and (c) the $98 million rescission and $19.1 million counterclaims were financially and/or legally weighty and/or complex.

## COUNTER-STATEMENT OF THE CASE ON CROSS-APPEAL

Briarwood's Opening Brief showed that on December 8, 2004, Briarwood filed its First Motion to compel the LLC to comply with the SPA and to reimburse it for, among other things, (a) the Georgia Medicaid Overpayments; and (b) Trust Fund Taxes. On May 31, 2005, the LLC opposed the First Motion and cross-moved for affirmative relief against Briarwood (the "Cross-Motion"). The LLC argued, among other things, that Briarwood's (a) claims for the Trust Fund

Taxes and Trade Vendor Payables were barred by the August 29, 2003 Letter Agreement's removal of the post-Closing Working Capital adjustment; (b) was precluded from recovery on the Trust Fund Taxes, Georgia Medicaid Overpayments and Trade Vendor Payables, since third parties other than Briarwood had technically paid such claims; and (c) Briarwood waived its claim to the Trust Fund Taxes under the terms of the July 21, 2003 Stipulation. Alternatively, the LLC argued that Briarwood's claims are really for breach of the SPA, and therefore limited by the SPA's $2 million liquidated damage clause (SPA §11.2).

The LLC's Cross-Motion also asserted five (5) counterclaims for affirmative relief against Briarwood, as follows: (i) an unspecified sum for unspecified obligations under a stipulation (the "IHS/Rotech Stipulation") between the Debtor and Rotech Medical Corporation ("Rotech"), which Briarwood allegedly assumed; (ii) rescission of the entire SPA under which Briarwood had paid approximately $98 million (the "$98 Million Rescission Counterclaim"), since Briarwood's prosecution of its claims constitutes alleged fraudulent misrepresentations; (iii) reimbursement of the $19.1 million payment that the Debtor made to the United States (the "$19.1 Million Counterclaim"); (iv) attorneys fees and costs for breach of SPA §11.11 (the "AttorneyFee/Cost Counterclaim"); and (v) $7.4 million in cash collateral the Debtors had posted for letters of credit which Briarwood was allegedly required to replace under the Plan (the "$7.4 Million Counterclaim").

On July 13 and August 10, 2005, the Court held a trial on the First Motion and Cross-Motion. At the close of the trial on August 10, 2005, Briarwood and the LLC agreed to close the record on the claims and counterclaims asserted on the Motion and Cross-motion other than the $7.4 Million Counterclaim, which was adjourned. On June 20, 2006, the Bankruptcy Court

issued its Opinion denying all Briarwood's claims and all the LLC's counterclaims, except the $7.4 Million Counterclaim which was deferred.

On or about July 7, 2006, the LLC filed its cross-appeal, which initially sought to appeal the denial of both its (a) Attorney Fee/Cost Counterclaim; and (b) Rotech Counterclaim (LLC's Statement of Issues on Cross-Appeal, ECF Doc. No. 3). However, in its Answering Brief, the LLC has abandoned its prosecution of the Rotech Counterclaim.

## A.    **The Rotech Counterclaim**

On March 26, 2002, Rotech emerged from chapter 11 pursuant to a separate plan of reorganization (the "Rotech Plan"). In connection therewith, the Debtor and Rotech entered into the IHS/Rotech Stipulation, under which the Debtor agreed, inter alia, to administer and fund all of Rotech's retained professional and general liabilities "for occurrences which took place" "prior" to the "Effective Date of the Rotech Plan", i.e., March 26, 2003 (D-2, para 84). The LLC asserts that Briarwood assumed those liabilities under the SPA.

However, in both its Response (D-2, paras 83-87) and Pre-Trial Factual Contentions (D-4, Ex. B, paras 74-78), the LLC failed to identify any purported obligation which Briarwood did not pay under the IHS/Rotech Stipulation. In fact, the LLC only indicated for the first time at trial that Briarwood did not pay certain professional services in the amount of $25,000 (D-7, Tr.155[8-23] & 160[10-17]).

The LLC further failed to present one shred of paper demonstrating the underlying $25,000 professional obligation. The LLC also failed to set forth any evidence that the purported $25,000 liability "took place" "prior" to the March 26, 2003 "Effective Date of the Rotech Plan", as required by the IHS/Rotech Stipulation (D-25, Ex. 21, para 6).

15

The Bankruptcy Court agreed with Briarwood, finding that "no evidence was presented as to the validity of the ($25,000) claim itself or when it arose (<u>Id</u>. at 155-56, 160.)" (D-21, p. 40). Thus, the Bankruptcy Court concluded that "the LLC has failed to establish that" the $25,000 obligation "is covered by the (IHS/)Rotech (S)tipulation or that Briarwood has any obligation to pay it." (D-21, p. 40).

**B.      The Attorney Fee/Cost Counterclaim**

The Bankruptcy Court correctly recognized that the LLC "has not prevailed on all its counterclaims" (D-21, pp. 40-41). In reality, the LLC asserted five separate counterclaims and failed to recover on any of them. Specifically, the Bankruptcy Court denied four of the counterclaims and deferred the fifth counterclaim. Consequently, the Bankruptcy Court properly concluded "that there is no 'prevailing party' and that an award of attorneys' fees and costs is not warranted (D-21, pp. 40-41).

**IV**

**THE BANKRUPTCY COURT PROPERLY DENIED THE LLC's ATTORNEY FEE/COST COUNTERCLAIM**

**A.      The LLC's Attorney Fee/Cost Counterclaim, The Gravamen Of Which Is For Breach Of The SPA and Damages, Is Barred Under SPA §2.2(a), Which Limits Recovery To The Deposit**

The LLC's Attorney Fee/Cost Counterclaim essentially seeks damages against Briarwood for breach of SPA §11.11 (should either party bring any action or counterclaim under the SPA,

16

the prevailing party shall be entitled to recover reasonable attorneys' fees and costs). However, SPA §2.2(a) expressly limits the LLC's "sole and exclusive remedy" for "damages" to receipt of the $12 million deposit which Briarwood put up in connection with the purchase price under the SPA (the "Deposit"). SPA §2.2(a) unambiguously states that:

> "Notwithstanding anything to the contrary herein, including without limitation, the provisions of Sections 11.13 and 11.15, the delivery of the Purchaser Deposit to the Seller shall constitute liquidated damages for any and all breaches of the terms of this Agreement (the SPA) by the Purchaser (Briarwood) and shall constitute the sole and exclusive remedy of the Seller for any breach by the Purchaser of the terms of this Agreement."

As part of the ultimate purchase price, Briarwood tendered the Deposit to the Debtor or the equivalent amount of the Deposit.[4] Thus, the LLC is precluded under SPA §2.2(a) from recovering on its Attorney Fee/Cost Counterclaim.

Briarwood raised its contractual limitation defense to the LLC's fees in the Pre-Trial Order, dated July 11, 2005, which incorporated Briarwood's Contentions of Disputed Facts (D-4, Ex. A, paras 144-152), thereby preserving it for appeal. In the LLC's Post-Trial Brief (D-12, pp. 26-27) it initially argued that Briarwood's contractual limitation defense is "fundamentally illogical". However, the LLC's argument is inconsistent, since it has repeatedly argued that Briarwood's claims are subject to similar contractual limitations under SPA §11.2 (D-2, paras 68-69; D-12, p. 25).[5] Moreover, the SPA was the product of seven months of "extensive negotiations" from May 2002 to December 3, 2002 (D-4, Ex. B, para 6); and the subsequent July

---

[4]     The LLC concedes that the Deposit was ultimately reduced to $6 million (D-2, para 21; D-4, Ex. B, para 22).

[5]     Since Briarwood was unsuccessful in its claims against the LLC, the Bankruptcy Court concluded that it did not need to reach the LLC's contractual limitation defense (D- 21, p. 36).

21, 2003 Stipulation and the August 29, 2003 Letter Agreement, which modified and reaffirmed the SPA, were likewise the product of "extensive negotiations"(D-4, Ex. B, paras 21 & 31). Nevertheless, the parties never eliminated SPA §2.2(a)'s contractual limitation as to the LLC's damages, which includes its Attorney Fee/Cost Counterclaim.

In the LLC's Post-Trial Brief it further argued that SPA §2.2(a) is "inapposite", because the "LLC is not seeking damages for breach of the SPA". However, the LLC had rejected a similar argument by Briarwood (seeking relief under the SPA but not for breach) "as nothing more than pure semantics and sophistry" (D-12, p. 25).

**B.**    **The Bankruptcy Court Correctly Ruled That There Was No "Prevailing Party"**

**I.**    **The Bankruptcy Court's Denial Of The Rotech Counterclaim Was Not A "Victory For The LLC"**

Recognizing that defeat on the Rotech Counterclaim precludes its right to attorney fees, the LLC asserts that the Bankruptcy Court decided the Rotech Counterclaim in its favor and that the ruling "was a victory for the LLC" (LLC AnsBrief pp. 9 & 33). The LLC's argument is specious, since the Bankruptcy Court denied the Rotech Counterclaim, finding that (a) there was no evidence as to the validity of the claim; and (b) the LLC failed to establish that it was even covered by the IHS/Rotech Stipulation (D-21, p. 40). Even further undercutting the LLC's "victory" argument, it initially sought to appeal the Bankruptcy Court's denial of the Rotech Counterclaim (LLC's Statement of Issues on Cross-Appeal, Issue No. 3, ECF Doc. No. 3), but has since abandoned the Rotech Counterclaim. The LLC also alleges that the Bankruptcy Court found that Briarwood was responsible to pay the Rotech Counteclaim (LLC AnsBrief pp. 9). The LLC's allegation is likewise false, since the Bankruptcy Court ruled that the LLC failed to establish "that Briarwood has any obligation to pay" the Rotech Counterclaim (D-21, p. 40).

II.     **The Bankruptcy Court Correctly Ruled, In Its Discretion, That There Was No Prevailing Party, Since (a) All the LLC's Counterclaims Were Denied; (b) The Rotech Counterclaim Did Not Require Proof Outside Of Briarwood's Claims; And (c) The $98 Million Rescission And $19.1 Million Counterclaims Were Financially And/Or Legally Weighty And/Or Complex**

Courts have discretion to deny costs when neither side entirely prevails in a litigation. 10 Wright, Miller & Kane, Federal Practice And Procedure § 2668, Ft. 28; Kropp v. Ziebarth, 601 F.2d 1348, 1358, Ft. 27 (8th Cir. 1979)("when a defendant counterclaims for affirmative relief and neither party prevails on its claim, it is quite appropriate to deny costs to both parties"); accord, Srybnik v. Epstein, 230 F.2d 683, 686 (2d Cir. 1956)(same); Q-Tips, Inc. v. Johnson & Johnson, 108 F.Supp. 845, 871 (D. N.J. 1952)(same), aff'd, 206 F.2d 144 (3rd Cir. 1953), mod, 207 F.2d 509 (3rd Cir. 1953), cert denied, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086 (1954); Magee v. McNany, 11 F.R.D. 592, 593 (W.D. Pa. 1951)(same).

Here, the Bankruptcy Court denied the LLC's fees and costs, since neither party prevailed on its claims for affirmative relief. Indeed, the Bankruptcy Court correctly denied all four of the LLC's pending counterclaims, including the Rotech Counterclaim, the Rescission Counterclaim, the $19 Million Counterclaim and the Attorney Fee/Cost Counterclaim; and deferred the $7.4 Million Counterclaim. Since the LLC failed to prevail on any of its counterclaims for affirmative relief, the Bankruptcy Court properly acted in its discretion in denying the LLC's claim for fees and costs.

The LLC cites to Tyler v. O'Neil, 112 Fed. Appx. 158 (3rd Cir. 2004) for the proposition that a defendant is entitled to fees and costs if it successfully defeats the plaintiff's substantial claims, even if it fails to sustain a minor counterclaim (LLC AnsBrief p. 34). However, Tyler does not stand for that proposition. Moreover, Tyler is also factually inapposite, since there the defendant's counterclaim, unlike the Rotech Counterclaim, was related to and "did not require

proof outside of (plaintiff's) claim". 112 Fed. Appx. at 163.[6]  In any event, the <u>Tyler</u> Court's

unpublished decision is not even binding within the Third Circuit. <u>See</u>, 3d Cir. R. 28.3; 3d Cir.

App. I, IOP. I 5.3.

To the extent relevant, <u>Tyler</u> supports Briarwood's position, recognizing that Courts will

deny costs despite dismissal of plaintiff's claims, where a defendant has failed to prevail on a

counterclaim which "require[s] proof outside the scope of the plaintiff's claim", 112 Fed. Appx.

at 162-63, as opposed to merely being related to plaintiff's claim. <u>See</u>, <u>City of Rome, Italy v.</u>

<u>Glanton</u>, 184 F.R.D. 547, 550-02 (E.D. Pa. 1999)(holding that defendants were not prevailing

parties, since certain counterclaims were "unrelated" to plaintiff's claims). Here, it is undisputed

that the Rotech Counterclaim required proof outside Briarwood's claims, and was not related to

Briarwood's claims. Thus, the Bankruptcy Court's discretionary ruling that there was no

prevailing party was proper on this ground alone.

Courts will also deny costs despite dismissal of plaintiff's claims, where a defendant has

failed to prevail on a counterclaim which is either financially and/or legally weighty and/or

complex. <u>City of Rome</u>, <u>supra</u>, 184 F.R.D. at 550-552.

---

[6]       The remaining authorities cited by the LLC for such proposition are also factually
inapposite (LLC AnsBrief p. 34-35). For example, in <u>25 East 83 Corp., v. East 83rd Street</u>
<u>Associates</u>, 213 A.D.2d 269, 624 N.Y.S.2d 125 (1st Dep't 1995), <u>Maine School Administrative</u>
<u>District No. 35 v. Mr. And Mrs. R.</u>, 321 F.3d 9 (1st Cir. 2003), and <u>Terrydale Liquidating Trust v.</u>
<u>Herbert Barness</u>, 645 F. Supp. 920 (S.D.N.Y. 1986), the defendants, unlike here, did not even
assert counterclaims but merely obtained dismissal of the plaintiff's claims. In <u>Great Earth</u>
<u>International Franchising Corp. v. Milks Development</u>, 2004 WL 2049268 (S.D.N.Y.), the
defendants, unlike here, successfully obtained "judgment" "on their breach of contract
counterclaims". And in <u>Scientific Holding Company, Ltd., v. Plessey Incorporated</u>, 510 F.2d 15
(2d Cir. 1974), the defendant's counterclaim for breach, unlike the Rotech Counterclaim, was
related to the plaintiff's breach of contract claim. Moreover, "consideration of plaintiff's claim"
"required three weeks of trial, 16 witnesses, over 1,899 pages of testimony and more than 100
exhibits", while "[l]ittle trial time was spent on the counterclaim". <u>Id.</u>, 510 F.2d at 28.

Here, the LLC's $98 Million Rescission Counterclaim sought rescission of the SPA under which Briarwood had paid approximately $98 million. The LLC, however, was not offering to return Briarwood's approximate $98 million payment. Thus, had the LLC's $98 Million Rescission Counterclaim been granted, Briarwood would have been out $98 million. Moreover, the LLC's $98 Million Rescission Counterclaim involved legally weighty and complex issues which Briarwood spent substantial time briefing in its Post-Trial Brief, including whether (i) rescission (a) was an improper attempt to end-run the Plan and various court orders; (b) was time-barred and/or untimely; (c) was precluded for failure to restore the status quo; and (d) constituted an election of remedies, precluding the LLC from seeking claims and defenses based on upholding the SPA; and (ii) the fraud (a) stated a claim; and (b) was justifiably relied upon (D-11, pp. 47-57). Moreover, in recognition of the weakness of its $98 Million Rescission Counterclaim, the LLC subsequently changed its underlying legal predicate from fraud to mutual mistake (compare, D-2, paras 88-97; D-4, Ex. B, paras 79-86; with D-12, p. 26). Although the LLC will undoubtedly argue that its $98 Million Rescission Counterclaim was merely pled in the alternative, its most recent pre-trial submission on July 11, 2005, omitted any such assertion (D-4, Ex. B, paras 79-86). In any event, Briarwood still had to spend substantial time in its Post-Trial Brief opposing the $98 Million Counterclaim (D-11, paras 126-154). Moreover, the $19.1 Million Counterclaim sought reimbursement from Briarwood for $19 million. The LLC's $19 Million Counterclaim also involved legally weighty and complex issues which Briarwood and the LLC spent substantial time dealing with in pleadings on both the First and Second Motions and during Trial.

Additionally, Briarwood prevailed on numerous issues in the contested proceeding, defeating the LLC's defenses that (a) Briarwood's claims for the Trust Fund Taxes and Trade

Vendor Payables were barred by the August 29, 2003 Letter Agreement's removal of the post-Closing Working Capital adjustment (D-21, pp. 5-8, & 30, Ft. 14); (b) Briarwood was precluded from recovery on the Trust Fund Taxes, Georgia Medicaid Overpayments and Trade Vendor Payables, since third parties other than Briarwood had technically paid such claims (D-21, pp. 5, Ft. 3; 15, Ft. 9 ; & 30, Ft. 14) and (c) Briarwood waived its claim to the Trust Fund Taxes under the terms of the July 21, 2003 Stipulation (D-21, p. 7).

## CONCLUSION

For the reasons set forth above, this Court should (a) reverse the portion of the Bankruptcy Court's Opinion that denied Briarwood's claims to the (i) Post-Closing Medicare Receivable; (ii) Georgia Medicaid Overpayments and/or (iii) Trust Fund Taxes; and render judgment in favor of Briarwood on those claims; and (b) affirm the portion of the Bankruptcy Court's Opinion that denied the LLC's Attorney Fee/Cost Counterclaim.

Respectfully submitted this 30th day of July 2007.

**DUANE MORRIS**

By: /s/ *Frederick B. Rosner*
Frederick B. Rosner
(ID No. 3995)
1100 North Market Street, Suite 1200
Wilmington, Delaware 19801-1246
Tel: (302) 657-4900
Fax: (302) 657-4901

- and -

22

**BACKENROTH FRANKEL & KRINSKY LLP**
Abraham Backenroth
489 Fifth Avenue, 28th Floor
New York, New York 10017
Tel: (212) 593-1100
Fax: (212) 644-0544

Attorneys for Appellant/Cross-Appellee, Abe
Briarwood Corporation

# COMPENDIUM OF UNREPORTED CASES

S.D. New York.
GREAT EARTH INTERNATIONAL FRANCHISING CORP., Plaintiff,

v.

MILKS DEVELOPMENT, et al., Defendants.
No. 01 Civ. 141(AKH), 02 Civ. 6194(AKH).
Sept. 13, 2004.


### MEMORANDUM AND ORDER ON FEES AND EXPENSES


HELLERSTEIN, J.

*1 On May 20, 2004, I read from the bench my Findings of Fact and Conclusions of Law, concluding a three-week bench trial that began on May 3, 2004. I found that plaintiff Great Earth International Franchising Corp. ("Great Earth") had breached the Master Franchise Agreement ("MFA") and the Sub-Franchise Agreements that it had entered into with the defendants, 1039405 Ontario, Inc. ("Ontario"), Milks Developments, Inc. ("Milks"), RGH Holdings Co. ("Gilchrest"), Edward Ricciardi, and Ted Odd, its Canadian franchisee and subfranchisees, respectively. I ruled that Great Earth's decision to cease all shipments of products to the defendants following a seizure of shipments at the Canadian border on June 22, 2000, informed by its previous failures to comply with Canadian regulations which induced heightened scrutiny on the part of the Canadian government, constituted a breach of its duty to provide product to defendants and its duty to use best efforts in doing so. Accordingly I gave judgment for defendants on their breach of contract counterclaims, and I dismissed all other claims and counterclaims.

As reflected on the record on May 20, 2004, and in the Judgment which I signed on June 10, 2004, I ordered plaintiff to pay damages to each defendant, as follows:

1. Ontario: $358,873 plus interest, for a total of $404,629.

2. Milks: $86,426 plus interest, for a total of $120,781.

3. Gilchrest: $36,121 plus interest, for a total of $43,977.

4. Ricciardi: $148,468 plus interest, for a total of $185,213.

5. Odd: $111,356 plus interest, for a total of $138,917.

Thus the total judgment against plaintiff equaled $893,517. The MFA provides for reimbursement of expenses and reasonable attorney's fees to the prevailing party. I declined to award these as part of my findings on May 20, however, and they were not included in the Judgment. I instead asked the parties to brief the question of which side should be considered the prevailing party and what measure of damages they should recover. See Tr. May 20, 2004, 751-52. The parties have now done

losing." Plaintiff argues that defendants had sought $20.5 million on their various counterclaims and ultimately recovered a minor fraction of that sum. It observes that it successfully defeated defendants' counterclaims for fraud, an effort which required three separate motions and formed the core of the pretrial motion practice in this case. *See Great Earth Int'l Franchising Corp. v. Milks Development, et al.,* 311 F.Supp.2d 419, 425 (S.D.N.Y.2004) ("This is essentially the third time that plaintiff has moved against defendants' fraud defense and counterclaim."). Plaintiff also argue that defendants' claims for loss of profit and punitive damages were equally central to the case, and that because defendants failed to recover such damages, they cannot be considered the prevailing parties. According to plaintiff, the judgment that was awarded fell closer to plaintiff on the scale between the maximum that plaintiff sought and the maximum sought by the defendants, and accordingly, plaintiff should be the prevailing party-or at the minimum, neither party should be considered as having prevailed.

**\*2** Defendants discount the pretrial motion practice which substantially cut down the size of their claims. Instead, defendants stress that they obtained a judgment at trial and successfully recovered damages. They note that plaintiff failed to recover on any of its causes of action, and they argue that a plaintiff which fails to obtain relief on any of its claims cannot be considered the prevailing party. According to defendants, the party which succeeds on even one of its claims must be considered prevailing.

Most caselaw involving disputes over whether a party can be classified as "prevailing," and can therefore recover attorney's fees, arises in the context of fee-shifting statutes, such as those found in employment, civil rights and other legislation. Nevertheless, the Supreme Court has held that "the term 'prevailing party' [is] a legal term of art," *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Resources,* 532 U.S. 598, 603 (2001), and the parties agree that the source of the fee-shifting requirement, whether statutory or contractual, should not matter for purposes of understanding that term.[FN1] *See MTX Communications Corp. v. LDDS/WorldCom, Inc.,* 2001 U.S. Dist. Lexis 7912, at \*2 (S.D.N.Y. June 13, 2001) ("[T]he standards governing who is a 'prevailing party' in the statutory context should not significantly differ in a contract case."); *Kuk Je Medical Corp. v. Home Diagnostics, Inc.,* 1994 U.S. Dist. Lexis 11903, at \*7-\*8 (S.D.N.Y. Aug. 26, 1994) (same).

> FN1. By citing New York cases, plaintiff may be implicitly arguing that since the contract is governed under New York law, see MFA § 11 .14, the definition of "prevailing party" should be defined by New York law rather than by federal law. Plaintiff does not argue, however, that New York law defines "prevailing party" any differently than does federal law, and indeed, the caselaw suggests that New York law will follow federal law on this issue unless the governing statutory text explicitly differs. *See, e.g., Baker v. Health Mgmt. Sys.,* 772 N.E.2d 1099, 1104 (N.Y.2002) (following Buckhannon); *Greer v. Wing,* 746 N.E.2d 178, 181 (harmonizing federal and state civil rights law); *New York State Clinical Lab. Ass'n v. Kaladjian,* 649 N.E.2d 811, 813-15 (N.Y.1995) (following the Supreme Court's holding that "the term 'prevailing party' considers whether the parties " 'succeed[ed] on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." but drawing a distinction where the text of the New

who won nominal damages was considered a prevailing party. *Id.* at 112.

The Second Circuit, too, has held that a prevailing party must prevail on at least some of its claims, but is not required to prevail on all or even most of them. "A party need not succeed on every issue raised by him, nor even the most crucial ones. Victory on a significant claim will suffice to give him prevailing party status." *LaRouche v. Kezer,* 20 F.3d 68, 71 (2d Cir.1994) (citing *Garland* ); *see also Abrahamson v. Bd. of Educ. of the Wappingers Falls Cent. Sch. Dist.,* 374 F.3d 66, 79 (2d Cir.2004) (quoting *Farrar* ).

**\*3** Based on this precedent, it is clear that defendants are the prevailing party. They have prevailed on some of their claims; plaintiff has prevailed on none. Although the size of defendants' recovery may be less than five percent of what its complaint initially demanded, a nearly one million dollar judgment is not insubstantial, and represents "[v]ictory on a significant claim." *LaRouche,* 20 F.3d at 71. Defendants have obtained a judgment which materially alters their legal relationship with Great Earth. *Farrar,* 506 U.S. at 111, and have become the "part[ies] in whose favor a judgment [was] rendered, regardless of the amount of damages awarded." *Buckhannon,* 532 U.S. at 603. While plaintiff may consider itself somewhat successful on its reduction of a $20.5 million claim to a judgment of under $1 million, it has not prevailed on any of its own claims and has not been awarded damages. Accordingly, I hold that defendants are the prevailing parties under section 11.07 of the MFA.

The next step is to determine the amount of fees and expenses defendants should recover.[FN2] Section 11.07 provides that the prevailing party is entitled to recover "the amount of all reasonable attorney's fees of such counsel and all other expenses incurred by the prevailing party in connection therewith." Based on the affidavit of Peter A. Dankin, plaintiffs seek a total of $502,983 U.S. and $16,741.14 CDN in fees, for defendants' American and Canadian counsel, respectively. Defendants derive the larger sum by multiplying 1289.7 hours, which they claim American counsel spent on this lawsuit, by the $390 hourly rate which defendants' American counsel apparently charged. Defendants also seek $111,622.27 U.S. and $8217.60 CND in expenses.[FN3]

> FN2. *McGuire v. Russell Miller, Inc.,* 1 F.3d 1306 (2d Cir.1993), sets forth the procedure for determining awards of attorneys fees in breach of contract cases. Although the procedure it establishes is inapplicable here because the trial was not heard before a jury, I follow its teaching that once the question of whether fees are recoverable has been resolved, "the judge is to determine a reasonable amount of fees." *Id.* at 1313.

> FN3. The Affidavit of Peter A. Dankin breaks down defendants' claimed expenses as follows: $32,875.84 to the law firm of McPheters & Dankin (¶ 19); $62,732.46 U.S. and $8217.60 CND for expert witness fees and expenses (¶ 20); and $16,013.97 for defendants' expenses, primarily their travel expenses between Canada.

Case 1:06-cv-00479-GMS    Document 16-2    Filed 07/30/2007    Page 5 of 11

*\*4* Although I decline to adopt such a precise formula, I follow the general approach and I find that defendants' "reasonable" attorney's fees must be tied to the $893,517 judgment they obtained in relation to defendants' overall claim of approximately $20 million. I also observe that a substantial amount of time was taken up in pre-trial proceedings because of the inflated nature of defendants' claims. Given these facts, I hold that a fee to defendants' attorneys of $150,000 is reasonable and sufficient.

While the MFA places a reasonableness limitation on the recovery of attorney's fees, it places no such limitation on the recovery of expenses. Section 11.07 simply provides for an award of "all other expenses incurred." Plaintiff has not suggested that defendants' claimed expenses are in any way erroneous or excessive. Accordingly, I award defendants their requested expenses of $111,622.27 U.S. and $8217.60 CND.[FN4]

> FN4. The parties shall convert this amount to dollars as of the date of this order.

Defendants shall accordingly be entitled to recover of plaintiffs the sum of $150,000 in attorney's fees and its expenses as stated above.

The Clerk shall close the file.

SO ORDERED.

S.D.N.Y.,2004.
Great Earth Intern. Franchising Corp. v. Milks Development, Inc.
Not Reported in F.Supp.2d, 2004 WL 2049268 (S.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

- 1:02cv06194 (Docket) (Aug. 05, 2002)
- 1:01cv00141 (Docket) (Jan. 08, 2001)
END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

NOT PRECEDENTIAL

Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP APP I 5.3.)

United States Court of Appeals,
Third Circuit.
Gary C. TYLER, Appellant,
v.
George M. O'NEILL; Michelenia O'Neill; W.M. M. Hendrickson Inc.
No. 03-4857.
Submitted Pursuant to Third Circuit LAR 34.1(a) Oct. 7, 2004.
Decided Oct. 13, 2004.

**Background:** Minority shareholder sued corporation, its majority shareholder, and its bookkeeper, alleging breach of fiduciary duty, fraud, violation of Racketeer Influenced and Corrupt Organizations Act (RICO), and conspiracy to violate RICO. Defendants asserted counterclaim challenging minority shareholder's 10 percent interest in corporation. After judgments entered on jury verdict in minority shareholder's favor on breach of fiduciary duty and fraud claims were vacated, the United States District Court for the Eastern District of Pennsylvania, Thomas J. Rueter, United States Magistrate Judge, 2003 WL 22890086, affirmed clerk of court's taxation of costs in defendants' favor, and final judgment in defendants' favor was entered. Minority shareholder appealed.

**Holdings:** The Court of Appeals, Van Antwerpen, Circuit Judge, held that:
(1) minority shareholder's pretrial success did not justify awarding him prevailing party status for purposes of assessing costs, and
(2) defendants qualified as "prevailing parties" entitled to costs, even though they did not prevail on counterclaim.

Affirmed.

West Headnotes

[1] KeyCite Notes 

⟵101 Corporations
  ⟵101IX Members and Stockholders
    ....101IX(A) Rights and Liabilities as to Corporation
      ⟵101k189 Actions Between Members and Corporation
        ⟵101k189(14) k. Costs and Attorney's Fees. Most Cited Cases

**[2]** KeyCite Notes

**101** Corporations
    **101IX** Members and Stockholders
        **101IX(A)** Rights and Liabilities as to Corporation
            **101k189** Actions Between Members and Corporation
                **101k189(14)** k. Costs and Attorney's Fees. Most Cited Cases


**101** Corporations KeyCite Notes
    **101IX** Members and Stockholders
        **101IX(A)** Rights and Liabilities as to Corporation
            **101k190** k. Actions Between Members of Same Corporation. Most Cited Cases

Corporation, majority shareholder, and bookkeeper qualified as "prevailing parties" entitled to costs in action by minority shareholder, even though they did not prevail on their counterclaim challenging minority shareholder's 10 percent interest in corporation, given that judgment was entered for corporation, majority shareholder, and bookkeeper on minority shareholder's claims, which cumulatively sought in excess of $1,000,000, and that counterclaim did not require proof outside minority shareholder's claims. Fed.Rules Civ.Proc.Rule 54(d)(1), 28 U.S.C.A.

*__\*159__* On Appeal from the United States District Court for the Eastern District of Pennsylvania. (D.C.Civ. No. 97-cv-03353). Magistrate Judge: Hon. Thomas J. Rueter.
Bruce S. Marks, Marks & Sokolov, Philadelphia, PA, for Appellant.
George M. O'Neill, Voorhees, NJ, Pro Se.
Michelenia O'Neill, Voorhees, NJ, Pro Se.

Before SLOVITER, VAN ANTWERPEN and COWEN, Circuit Judges.


OPINION OF THE COURT


VAN ANTWERPEN, Circuit Judge.
**\*\*1** Appellant Gary C. Tyler challenges the Order of the Magistrate Judge entered on November 24, 2003, which affirmed the Clerk of Court's taxation of costs in favor of Defendants/Appellees, and the District Court's Order of December 8, 2003, which entered judgment in favor of Defendants and

records Appellant sought pursuant to 15 Pa. C.S.A. § 1508, thus mooting Appellant's claim for access to books and records. In addition, Appellant's claim for wages owed pursuant to 43 P.S. § 260.1 *et seq.* was settled pre-trial for $5,000.00.

Case 1:06-cv-00479-GMS    Document 16-2    Filed 07/30/2007    Page 8 of 11

On June 4, 1998, a jury found Appellees liable for breach of fiduciary duty and fraud to Appellant individually, but not liable on Appellant's other individual claims or on the derivative claims. The jury awarded compensatory damages to Appellant in the amount of $225,000.00 against Appellee George O'Neill and $0 against Appellee Michelenia O'Neill. The jury found in favor of Appellant on the Appellees' counterclaim. The court entered Civil Judgments accordingly.

Appellees filed a post-trial motion for judgment as a matter of law to vacate, alter, or amend judgment. Based upon the jury's finding that Appellant should have known of the fraud in March, 1991, the court determined that Appellant's claims of fraud and breach of fiduciary duty were barred by the applicable statute of limitations. On December 15, 1998, the court entered an Order vacating the Civil Judgments entered in accordance with the jury's findings. The jury verdict on the counterclaim in favor of Appellant was not disturbed. The Third Circuit affirmed the judgment notwithstanding the verdict in favor of Appellees. *Tyler v. O'Neill,* 189 F.3d 465 (3d Cir.1999) (table), *cert. denied,* 528 U.S. 1137, 120 S.Ct. 981, 145 L.Ed.2d 932 (2000).

On April 8, 2003, the Clerk of Court entered a taxation of costs in favor of Appellees in the amount of $3,787.03. In a Memorandum and Order entered on November 24, 2003, the District Court affirmed the Clerk's taxation of costs. A final judgment in favor of Appellees was entered on December 8, 2003.

## II. Jurisdiction

**\*\*2** The District Court had subject matter jurisdiction over Appellant's state law claims pursuant to 28 U.S.C. § 1332 and also pursuant to 28 U.S.C. § 1331, as supplemental to Appellant's federal claims. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III. Analysis

### A. Standard of Review

The question of whether a party is the "prevailing party" for purposes of awarding costs pursuant to Rule 54(d) is a legal issue subject to plenary review. *Institutionalized Juveniles v. Sec'y of Public Welfare,* 758 F.2d 897, 926 (3d Cir.1985). While we exercise plenary review of legal questions pertaining to Rule 54(d)(1), we review the district court's application of those legal precepts for abuse of discretion. *See In re Paoli R.R. Yard PCB Litig.,* 221 F.3d 449, 458 (3d Cir.2000). We review the district court's findings of fact for clear error. *Coalition to Save Our Children v. State Board of Educ. of Del.,* 90 F.3d 752, 759 (3d Cir.1996).

prevailing party because he was afforded concrete relief in the course of the litigation-namely, that he succeeded in obtaining access to Hendrickson's books and records, and payment of wages. Alternatively, Appellant asserts that neither party was the prevailing party because Appellees lost on their counterclaim, which Appellant contends presented a critical issue in the litigation and required proof outside the scope of Appellant's claims. Consequently, he asserts that each party should be responsible for its own costs.

[1]    In this Circuit, the standard used for determining prevailing party status is "whether plaintiff achieved 'some of the benefit sought' by the party bringing the suit." *Institutionalized Juveniles,* 758 F.2d at 910 (citations omitted). In applying this standard, it is important to identify the relief plaintiff sought and, when relevant, the legal theories upon which relief was based. *Id.* at 911. Ordinarily, a party in whose favor judgment is rendered is the prevailing party for purposes of Rule 54(d). 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2667 (3d ed.1998). Because the test focuses on the relief actually obtained, however, "[i]n assessing who is a prevailing party, we look to the substance of the litigation's outcome," and "refuse to give conclusive weight to the form of the judgment." *Ross v. Horn,* 598 F.2d 1312, 1322 (3d Cir.1979), *cert. denied,* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). It logically follows from this approach that a party is prevailing to the extent extrajudicial relief renders claims moot. *Institutionalized Juveniles,* 758 F.2d at 911 (citing *Horn,* 598 F.2d at 1322). Moreover, significant to the prevailing party inquiry is whether the resolution of the dispute materially altered the legal relationship between the parties. See *Truesdell v. Philadelphia Hous. Auth.,* 290 F.3d 159, 163-64 (3d Cir.2002). This may occur through, for example, an enforceable judgment on the merits, or a settlement agreement enforceable through a court-ordered consent decree. *Buckhannon Bd. And Care Home, Inc. v. West Virginia Dept. Of Health and Human Res.,* 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).

**3** Where a defendant successfully defends against a plaintiff's substantial claims and judgment is entered accordingly, the defendant is generally considered the prevailing party for purposes of Rule 54(d)(1). *See, e.g., Russian River Watershed Protection Comm. v. City of Santa Rosa,* 142 F.3d 1136, 1144 (9 Cir.1998). In light of the rule that "a determination of who is the prevailing party for purposes of awarding costs should not depend on the position of the parties at each stage of the litigation but should be made when the controversy is finally decided," Wright, Miller & Kane, *supra* § 2667, we agree with the District Court that Appellant's success in obtaining discovery and pre-trial settlement of one of his minor claims does not justify awarding him prevailing party status. Appellant failed to obtain relief on any of his major claims; his limited pre-trial success is insignificant in the context of the relief sought by the entire Complaint. Indeed, on all Appellant's major claims, judgment was entered in favor of Appellees.

[2]    Appellant's alternative argument that neither party is the prevailing party because Appellees did not prevail on their counterclaim is likewise unpersuasive under**162** these circumstances. Appellant relies primarily on *Kropp v. Ziebarth,* 601 F.2d 1348, 1358 n. 27 (8 Cir.1979) and *Srybnik v. Epstein,* 230 F.2d 683, 686 (2d Cir.1956) in support of the proposition that when neither plaintiff

cases cited above illustrate that there may exist a "prevailing party" within the meaning of Rule 54(d)(1) even where neither party succeeds on its affirmative claim. This determination is fact-specific.

**\*4** A number of our district courts have directly confronted this issue and illuminated the pertinent factors to be considered in addressing it. Generally, in assessing prevailing party status when neither party has prevailed on its affirmative claims, courts examine whether the defendant has advanced counterclaims that are not related in some way to the main complaint, or otherwise require proof outside the scope of the plaintiff's claim, and also examine the relative "size" of the counterclaims in comparison to the counts in the complaint. In *Lacovara,* upon noting that the defendant's counterclaim was limited to $4,494 while the complaint sought over $80,000, and that the bulk of the trial consisted of proving plaintiff's claims, the district court determined the defendant to be the prevailing party despite the fact that neither party had been awarded damages. 102 F.R.D. at 961. The district court supported its analysis with the Second Circuit's decision in *Scientific Holding Co.* In that case, judgment was entered dismissing both plaintiff's complaint and defendant's counterclaim, with costs taxed in favor of the defendant. Judge Friendly rejected the plaintiff's contention that the defendant could not be the prevailing party under Rule 54(d) because it had lost on its counterclaim as "too wooden a view." 510 F.2d at 28. Instead, the Second Circuit reasoned:

At trial [the defendant] limited its counterclaim to the two items mentioned in Part V of this opinion. Little trial time was spent on the counterclaim, whereas consideration of plaintiff's claim for $1,260,000 compensatory damages plus punitive damages required three weeks of trial, 16 witnesses, over 1,800 pages of testimony and more than 100 exhibits. District courts have held that a defendant who successfully fends off a large claim may be awarded costs despite failure to prevail on a counterclaim.

*Id.* (citations omitted). *See also* **\*163** City of Rome v. Glanton, 184 F.R.D. 547, 550-51 (E.D.Pa.1999) (finding neither party to be the prevailing party in light of the "aggressive stance taken by the defendants in expanding the case far beyond the allegations in the complaint," but acknowledging that "[t]his is not to say that a defendant that succeeds in defending itself against a complaint but that advances unsuccessful counterclaims should always lose its presumptive rights to costs." The court should look to the nature of the counterclaims and their relationship to the main complaint); *Hubner v. Schoonmaker,* No. 89-3400, 1993 WL 273689, at \*3-4 (E.D.Pa. July 20, 1993) ("Where plaintiffs fail to sustain their original claim and defendants assert a counterclaim which presents no issue requiring proof outside the scope of plaintiffs' claim, even where the plaintiffs prevail on the counterclaim, costs may be taxed in favor of defendants as the prevailing parties.").

In the case *sub judice,* judgment was entered in favor of Appellees with respect to Appellant's claims, which cumulatively sought in excess of one million dollars, and judgment was entered in favor of Appellant with respect to Appellees' sole counterclaim, which contested Appellant's 10% ownership in Hendrickson and sought rescission. The District Court specifically found that Appellees' counterclaim "involved the same legal and factual issues which formed the basis of the defense to the complaint," and found that the counterclaim did not require proof outside of Appellant's claim. Given the limited scope of the counterclaim and Appellees' success in defending against Appellant's much larger claims for damages, the District Court properly determined that Appellees were the prevailing party and

Briefs and Other Related Documents <u>(Back to top)</u>

• <u>2004 WL 4986320</u> (Appellate Brief) Brief of Appellant (Aug. 3, 2004) <u>Original Image of this Document with Appendix (PDF)</u>
• <u>2004 WL 4986321</u> (Appellate Brief) Brief for Appellees (Apr. 2, 2004) <u>Original Image of this Document (PDF)</u>
• <u>03-4857</u> (Docket) (Dec. 30, 2003)
END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re

INTEGRATED HEALTH SERVICES, INC., et al.,    )
     )   Chapter 11
     )
     Debtors.     )   Case No. 00-389 (MFW)
     )
_____)
     )
Abe Briarwood Corporation     )
     )
     Appellant/Cross-Appellee,   )   Civil Action No. 06-479 (GMS)
     )
     v.     )
     )   (Consolidated Lead Case)
IHS Liquidating LLC     )
     )
     Appellee/Cross-Appellant.   )
_____)

## CERTIFICATE OF SERVICE

I, Frederick B. Rosner, hereby certify that on this 30th day of July, 2007, I served one

copy of *Abe Briarwood Corporation's Reply Brief in Further Support of Appeal and in*

*Opposition to Cross-Appeal* upon the following parties in the manner indicated:

Robert S. Brady, Esquire
Edmon L. Morton, Esquire
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
*Via Hand Delivery*

Arthur Steinberg, Esquire
Lester M. Kirshenbaum, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
*Via First Class Mail, Postage Pre-Paid*

**DUANE MORRIS LLP**

/s/ Frederick B Rosner
Frederick B. Rosner (DE 3995)
1100 North Market Street, Suite 1200
Wilmington, DE 19801